LAW OFFICES OF BING LI, LLC
Bing Li, Esq. (BL 5550)
980 Avenue of the Americas, Suite 405
New York, NY 10018-5443
(212) 967-7690
bli@blillc.com
Attorneys for Plaintiff
*Dafeng Hengwei Textile Co., Ltd.*

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  **OCT 24 2013**  ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

DAFENG HENGWEI TEXTILE CO., LTD.,

                                        Plaintiff,

        -against-

ACECO INDUSTRIAL & COMMERCIAL
CORPORATION, ACECO, INC., DAVID
LIU a/k/a DAVID Z. LIU a/k/a ZUOWEI LIU,
and CHANG-ZHU YU a/k/a CEE CEE YU,
individually and as agents of Aceco Industrial
& Commercial Corporation and Aceco, Inc.,

                                        Defendants.
-----------------------------------------------------------x

**CV-13 5829**

Case No.: 13 Civ. _____ **BRODIE, J.**

**VERIFIED COMPLAINT**

**POHORELSKY, M.**

        Plaintiff, DAFENG HENGWEI TEXTILE CO., LTD. ("Plaintiff" or "Dafeng"), by

and through its undersigned attorneys, for its complaint against Defendants ACECO

INDUSTRIAL & COMMERCIAL CORPORATION ("AIC"), ACECO, INC. ("Aceco"),

DAVID LIU a/k/a DAVID Z. LIU a/k/a ZUOWEI LIU ("Liu") and CHANG-ZHU YU a/k/a

CEE CEE YU ("Yu") (collectively "defendants"), hereinafter alleges at all times, and upon

information and belief, as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over the within civil action pursuant to 28 U.S.C. § 1331, 1332(a) and (c) and, with respect to certain claims, 28 U.S.C. § 1367. Pursuant to 28 U.S.C. § 1332(a)(2), the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a State of the United States and citizens or subjects of a foreign state.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c).

## PARTIES

3.     Plaintiff Dafeng is a corporation incorporated under the laws of the People's Republic of China with its principal place of business at 16 Changping Road, Dafeng City, Jiangsu Province, the People's Republic of China.

4.     Defendant AIC is a corporation incorporated under the laws of the State of New York with its principal place of business at 83 Steamboat Road, Great Neck, NY 11024.

5.     Defendant Aceco is a corporation incorporated under the laws of the State of New York with its principal place of business at 83 Steamboat Road, Great Neck, NY 11024.

6.     In or about 2005, AIC merged with Aceco or changed its name from Aceco Industrial & Commercial Corporation to Aceco, Inc. and, as a result, Aceco became the successor-in-interest to AIC.[1]

7.     Defendant Liu is a natural person, a resident and citizen of the State of New York, currently residing at 25 Gracewood Dr., Manhasset, NY 11030.

8.     At all relevant times herein, Liu was the officer, director and shareholder of Aceco.

---

[1] AIC and Aceco will be referred to interchangeably as "Aceco."

9.      Defendant Yu is a natural person, a resident and citizen of the State of New York, currently residing at 25 Gracewood Dr., Manhasset, NY 11030.

10.      At all relevant times herein, Yu was the officer, director and shareholder of Aceco.

11.      Liu and Yu are married to each other.

## NATURE OF ACTION

12.      From March through July of 2013, Plaintiff manufactured and delivered to Defendant Aceco a total of fifty-nine (59) shipments of microfiber 3-piece sheet set (one flat sheet, one fitted sheet and one pillow case) of assorted sizes and colors for a total contract price of $2,093,100.12.  Aceco paid a total of $115,458.10, and refused to pay the balance of **$1,977,642.02**.  Individual defendants Liu and Yu, husband and wife, who exercised full and complete control of Aceco, disregarded the corporate formalities over Aceco, depleted the funds of Aceco for their personal uses unrelated to the business of Aceco and caused Aceco to become an undercapitalized shell company.  As a result, the corporate veil should be pierced to hold Liu and Yu personal liable for Aceco's debt.

## STATEMENT OF FACTS

13.      Aceco was at all relevant times in the business of importing and distributing bed sheets manufactured by Plaintiff and other home furnishing products.

14.      In late 2009, Aceco contracted Plaintiff to supply its needed products.

15.      The parties agreed that the payment term was Documents against Payment ("D/P") at sight, by which Plaintiff would deliver all shipping related documents pertaining to a particular shipment to its remitting bank.  Plaintiff's remitting bank would then present

the papers to Aceco's collecting bank, which, in turn, would contact Aceco for payment before it released the shipping documents to Aceco.

16.     Specifically, after each shipment was made to Defendant's purchase order, Plaintiff would release the manufactured goods to the freight forwarder designated by Defendant and Plaintiff would then deliver the shipping related documents including the Sea Waybills, Packing List, and Commercial Invoice to its remitting bank, China Construction Bank Yancheng Branch ("CCB").  CCB would then send the shipping related documents to Aceco's collecting bank in the U.S., CITIC Ka Wah Bank Ltd., New York Branch ("CITIC KW"), which would, in turn, contact Aceco for payment against the commercial invoice.

17.     All the products made by Plaintiff to Aceco's purchase orders were sold and delivered to Kmart Corporation ("Kmart") at the direction of Aceco.

18.     All the products made by Plaintiff to Aceco's purchase orders were pre-inspected for quality compliances by Kmark's China representative and all passed Kmart's quality inspection before they were shipped.

19.     Kmart required, however, that its freight forwarder issue Sea Waybills as opposed to Bills of Lading so that Kmart may pick up the merchandise at the port of discharge without the need to present the original Bills of Lading.

20.     Each time when Aceco's collecting bank was unable to collect funds from Aceco to pay Plaintiff's invoices, Aceco, by its officer and shareholder, would request Plaintiff for payment extensions and promise to pay the invoices.  Aceco would make partial payments against the outstanding invoices and at the same time issue new purchase orders to Plaintiff for production and shipments.

21.    As a result, despite the express contractual term of D/P At Sight, Aceco was able to accumulate unpaid balance against Plaintiff's contract price.

22.    At or about the beginning of 2013, Aceco owed Plaintiff in the amount of about $1,300,000 on the goods previously sold and delivered to Aceco.

23.    Concerned with the substantial balance outstanding, Plaintiff indicated its reluctance to accept Aceco's new purchase orders and requested that Aceco make a payment schedule for the substantial balance owed and for the new contract prices to be invoiced.

24.    Aceco assured Plaintiff in an email dated January 20, 2013 that it would wire transfer $200,000 the following week and would arrange more payments; that it would "open a L/C [letter of credit] to every single shipment[] to you from Feb. and continuing pay you the balance by T/T [wire transfer]."

25.    In reliance thereupon, Plaintiff agreed to accept Aceco's new purchase orders and delivered 23 shipments of three-piece sheet sets to Aceco between January 5 and April 14, 2013, for a total new contract price of about $1,500,000.

26.    On the other hand, during the same period of time, despite its express assurances for L/C payments for the new shipments and T/T payments for the outstanding balance, Aceco did not issue any Letters of Credits to pay for the new shipments except that it paid about $1,000,000 toward the outstanding balance, thus resulting in a new net balance of about $500,000 and a net total balance of about $1,800,000.

27.    By email dated April 17, 2013, Plaintiff, by its Business Manager Anny Shi ("Anny"), wrote to Aceco to express its serious concern about the increasingly substantial overdue balance and inquired Aceco as to its promised letters of credit.

28.     In response, Aceco, by Liu, informed Plaintiff that it was waiting for a large payment from one of its major clients which would be received by the end of that month.

29.     At the same time, Plaintiff also requested that Aceco make a payment plan for the unpaid balance, which Aceco, by its representative May Tee, confirmed by email dated May 9, 2013 as to the amount of existing balance of $1,737,733.96 and as to Aceco's payment schedule.

30.     Thereafter until the end of July, 2013, Plaintiff delivered to Aceco additional 44 containers of goods produced to Aceco's purchase orders, for a total new contract price of $ 1,242,945.74.

31.     On the other hand, during the same period of time, Aceco made a total of $1,298,741.16 toward the overdue existing balance, thus leaving a new unpaid grand total of balance of $**1,977,642.02** as of the end of July, 2013.

32.     A summary of the total outstanding invoices identified by the invoice numbers, dates of issuance, Aceco's purchase orders, packages and quantity counts and invoice amounts is shown in Schedule A as follows:

<u>Schedule A:  Plaintiff's Outstanding Invoices and Balance Due</u>

| COUNT | INVOICE DATE | INVOICE NO. | PO NO. | PACKAGE (CTN) | QUANTITY (SET) | AMOUNT | ITEM DESCRIPTION |
|---|---|---|---|---|---|---|---|
| 1 | 2/26/2013 | HW130001-5 | P138T | 8,656 | 34,624 | 170,157.28 | *See Note 1.* |
| 2 | 3/1/2013 | HW130051-5 | VTDKS | 2,020 | 8,080 | 39,713.20 | |
| 3 | 3/5/2013 | HW130001-7 | P138T | 3,966 | 15,864 | 77,970.88 | |
| 4 | 3/5/2013 | HW120048-54 | P141F | 3,794 | 15,176 | 72,726.84 | |
| 5 | 3/12/2013 | HW130001-8 | P138T | 3,780 | 15,120 | 74,310.40 | |
| 6 | 3/11/2013 | HW120048-55&53-2 | P141F | 103 | 412 | 2,068.24 | |
| 7 | 3/16/2013 | HW120048-56 | P141F | 135 | 540 | 2,685.84 | |

| 8 | 4/6/2013 | HW120048-60 | P141F | 1,574 | 6,296 | 33,076.04 | |
| 9 | 4/9/2013 | HW120048-59-1 | P141V | 336 | 1,344 | 7,795.20 | |
| 10 | 4/9/2013 | HW120048-58 | P141V | 3,027 | 12,108 | 60,276.48 | |
| 11 | 4/9/2013 | HW130051-6 | VTDKS | 2,945 | 11,780 | 57,896.00 | |
| 12 | 4/9/2013 | HW120048-59-2 | P141V | 2,804 | 11,204 | 54,821.16 | |
| 13 | 4/9/2013 | HW120048-57 | P141V | 3,942 | 15,768 | 81,198.72 | |
| 14 | 4/15/2013 | HW130051-7 | VTDKS | 2,103 | 8,412 | 41,347.44 | |
| 15 | 4/20/2013 | HW130051-8 | VTDKS | 1,346 | 5,384 | 26,998.88 | |
| 16 | 4/21/2013 | HW130030-4 | P143P | 2,827 | 5,654 | 24,142.58 | |
| 17 | 4/21/2013 | HW130030-2 | P143P | 3,886 | 7,772 | 33,186.44 | |
| 18 | 4/23/2013 | HW130030-1 | P143P | 7,945 | 15,890 | 66,261.30 | |
| 19 | 4/23/2013 | HW130030-3 | P143P | 5,407 | 10,814 | 45,094.38 | |
| 20 | 5/12/2013 | HW130008-2-1 | VTDU6 | 871 | 3,484 | 20,024.88 | |
| 21 | 5/12/2013 | HW130008-3-1 | VTDU6 | 184 | 736 | 4,283.52 | |
| 22 | 5/24/2013 | HW130008-1 | VTDU6 | 1,200 | 4,800 | 23,590.80 | |
| 23 | 5/14/2013 | HW120048-63 | P154Y | 1,087 | 4,348 | 22,488.48 | |
| 24 | 5/14/2013 | HW130008-3-2 | VTDU6 | 1,688 | 6,752 | 32,666.24 | |
| 25 | 5/16/2013 | HW120048-62-1 | P154 A | 235 | 940 | 5,546.00 | |
| 26 | 5/17/2013 | HW120048-62-2 | P154V | 156 | 624 | 3,263.52 | |
| 27 | 5/16/2013 | HW130008-2-2 | VTDU6 | 927 | 3,708 | 16,023.36 | |
| 28 | 5/16/2013 | HW120048-64 | P154 A | 1,591 | 6,364 | 32,795.40 | |
| 29 | 5/17/2013 | HW130008-4 | VTDU6 | 2,622 | 10,488 | 51,544.56 | |
| 30 | 5/20/2013 | HW120048-61 | P154 A | 1,256 | 5,024 | 26,484.48 | |
| 31 | 6/14/2013 | HW130102-3(A) | VTE4G | 2,900 | 11,600 | 56,677.84 | |
| 32 | 6/14/2013 | VTE4H | VTE4H | 175 | 700 | 3,934.00 | |
| 33 | 6/14/2013 | HW130102-7 (A) | VTE4G | 2,913 | 11,652 | 56,916.12 | |
| 34 | 6/14/2013 | HW130102-7 (B) | VTE4H | 176 | 704 | 3,956.48 | |
| 35 | 6/15/2013 | HW130102-4-2(A) | VTE4G | 2,477 | 9,908 | 49,956.72 | |
| 36 | 6/15/2013 | HW130102-4-2 (B) | VTE4H | 256 | 1,024 | 5,754.88 | |

| 37 | 6/15/2013 | HW130102-8-2(A) | VTE4G | 2,492 | 9,968 | 50,253.96 | |
| 38 | 6/17/2013 | HW130102-4-1 | VTE4G | 47 | 188 | 787.72 | |
| 39 | 6/17/2013 | HW130102-1 (B) | VTE4H | 117 | 468 | 2,630.16 | |
| 40 | 6/17/2013 | HW130102-8-1 | VTE4G | 48 | 192 | 804.48 | |
| 41 | 6/17/2013 | HW130102-1 (A) | VTE4G | 1,112 | 4,448 | 21,212.68 | |
| 42 | 6/17/2013 | HW130102-5(B) | VTE4H | 117 | 468 | 2,630.16 | |
| 43 | 6/17/2013 | HW130102-5 (A) | VTE4G | 1,129 | 4,516 | 21,546.76 | |
| 44 | 6/18/2013 | HW130102-2 (B) | VTE4H | 183 | 732 | 4,113.84 | |
| 45 | 6/18/2013 | HW130102-6 (A) | VTE4G | 1,819 | 7,276 | 35,874.32 | |
| 46 | 6/18/2013 | HW130102-6 (B) | VTE4H | 183 | 732 | 4,113.84 | |
| 47 | 6/18/2013 | HW130102-2 (A) | VTE4G | 1,803 | 7,212 | 35,557.08 | |
| 48 | 6/19/2013 | HW130102-8-2(B) | VTE4G | 256 | 1,024 | 5,754.88 | |
| 49 | 7/15/2013 | HW130125-1-1(B) | VTEGX | 224 | 896 | 5,214.72 | |
| 50 | 7/15/2013 | HW130125-1-1(A) | VTEGW | 126 | 504 | 2,933.28 | |
| 51 | 7/16/2013 | HW130125-1-2 | VTEGW | 2,453 | 9,812 | 48,999.20 | |
| 52 | 7/16/2013 | HW130125-4 (A) | VTEGW | 3,984 | 15,936 | 81,249.48 | |
| 53 | 7/16/2013 | HW130125-4 (B) | VTEGX | 351 | 1,404 | 7,890.48 | |
| 54 | 7/18/2013 | HW130125-3 (A) | VTEGW | 3,633 | 14,532 | 72,502.52 | |
| 55 | 7/18/2013 | HW130125-3 (B) | VTEGX | 336 | 1,344 | 7,553.28 | |
| 56 | 7/19/2013 | HW130125-2 (A) | VTEGW | 8,412 | 33,648 | 167,369.40 | |
| 57 | 7/19/2013 | HW130125-2 (B) | VTEGX | 490 | 1,960 | 11,015.20 | |
| | **Total** | | | | | **1,977,642.02** | |

Note 1: "Item Description" is identical for all these invoices:
MICRO FIBER 3 PCS SHEET SET INCLUDING: FLAT SHEET (1 PC),
FITTED SHEET (1 PC),  PILLOWCASE (1PC).

_____

33.     Kmart duly accepted all the products produced and shipped by Plaintiff

without incident and has paid or is in the process of paying Aceco according to their payment

terms.

34.    By the end of July, 2013, Aceco's collecting bank CICIT KW returned to Plaintiff's bank CCB all unpaid invoices and payment requests.

35.    At or around the same time, Liu called Yonggen Qin ("Qin"), the President of Dafeng, and informed him that Kmart would not continue with the purchases through Aceco and Aceco would discontinue its business with Plaintiff.

36.    In fact, Plaintiff later learned that Aceco terminated its business relationship with Kmart unilaterally.

37.    Thereafter, Liu became unreachable and refused to answer Plaintiff's numerous telephone calls or speak with Plaintiff regarding the outstanding balance.

38.    By email dated September 7, 2013, Anny wrote to Aceco on behalf of Plaintiff as follows (unedited for spelling or grammar errors):

> *DEAR DAVID,*
>
> *PLEASE CHECK THE ATTACHD PAYMENT LIST, AND BANK MESSAGE, ThE GOODS SHIPPED LONG TIME AGO, AT THE MIDDLE OF AUG., YOU CALLED MR. QIN , WILL ARRANGE PAYMENT USD500000.00 BEFORE THE END OF AUG., BUT TODAY IS SEP.7TH, WE STILL DID NOT RECEIVED ANY CENTS FROM YOUR COMPANY, WHY? WHAT'S HAPPEN? WE TRUST YOU, WE MADE SUCH MANY BUSINESS LAST 3-4 YEARS, WHY DO LIKE THIS WAY NOW?*
>
> *PLEASE MUST ARRANGE THE PAYMENT TO US FROM NEXT WEEK MONDAY AS PER THE ATTACHED PAYMENT LIST.*

39.    By email dated September 11, 2013, Anny sent this September 7, 2013 email to Liu again, and the third time on September 17, 2013.

40.    Email receipt confirmation messages show that Liu received these messages sent to him.

41.     Liu continued to disregard these messages and refused to answer the numerous

calls made by Plaintiff's representatives.

42.     By email dated August 13, 2013, Qin wrote to Liu as follows:

> *Mr. Liu: Please give me a call or send me an email when you have a chance.*

43.     By email dated August 14, 2013, Qin again wrote to Liu as follows:

> *Mr. Liu:*
> *How is the situation like? Very urgent !!!!!!!!!!!!!!!!!*
> *Please inform, return telephone call to me.*

44.     By email dated September 4, 2013, Qin again wrote to Liu as follows:

> *How are you, Mr. Liu:*
> *Regarding the contract price matter, it was agreed that you would pay my company $500,000. But not a penny has been received by today. Please I request Mr. Liu must remit the funds to me today, and at the same time answer my phone calls. Please Mr. Liu do not use any excuse to delay and refuse to pay.*

45.     By email dated September 9, 2013, Qin again wrote to Liu as follows:

> *Mr. Liu:*
> *Please you must wire transfer to me $500,000 when you start work today. This is your promise, you must do it and cannot break your promise. Right now my company really does not have funds to operate, extremely difficult!!!*

46.     Liu did not respond to any of these email messages sent to him by Plaintiff's

President, even though the email receipt confirmation messages showed Liu received them.

47.     On or about September 13, 2013, Liu finally called Qin and spoke with Qin for

about 70 minutes. Liu admitted to Qin that Aceco owed Plaintiff the amount as stated, $1.9

million for convenience; that Aceco did not have any money to pay Plaintiff; and that Liu

promised that he would pay back this amount owed whenever he had money.

48.     During the same telephone conversation, Liu also admitted to Qin that Kmart was paying Aceco without any problem and further informed Qin that Aceco had substantially downsized its business operations and ceased doing business as it did before but started doing business as an independent agent on a commission basis.

49.     During the same telephone conversation, Plaintiff demanded that Liu commit to a payment plan for the amount owed, which Liu refused to do but repeated that he would pay Plaintiff when he had money.  Liu also informed Qin that he was having personal financial troubles.

50.     Subsequent to the September 13, 2013 telephone conversation, Liu once again became unreachable and refused to answer Plaintiff's numerous calls and emails messages about Aceco's balance owed to Plaintiff.

51.     Due to Aceco's failure to pay the full contract prices for Plaintiff's products, Plaintiff also sustained a loss in the form of lost tax rebate credit from the Chinese tax authorities in the amount of about ¥1,993,362.00 (RMB), or approximately $332,227 (conversion ratio about ¥6.00 to $1).

52.     Aceco was fully aware of the tax rebate loss caused by its nonpayment for Plaintiff's merchandise.

## AS AND FOR A FIRST CAUSE OF ACTION
(Against Aceco for breach of contract, and
against Liu and Yu for piercing the corporate veil)

53.     Plaintiff Dafeng repeats and re-alleges each and every paragraph number "1" through "52" of this Complaint as if fully set forth herein.

54.     The contract of sales of goods entered into by Plaintiff and Aceco is valid and binding.

55.     Plaintiff fully performed its obligations under the contract with Aceco by producing, shipping, and delivering the merchandise to Aceco in accordance with the requirements under the contract.

56.     Aceco breached its obligations under the contract without justification by refusing to pay the value of the goods that Plaintiff sold and delivered to and accepted by Aceco.

57.     Aceco's breach of the parties' sales contract was fundamental as it substantially deprived Plaintiff of what it is entitled to expect under the contract.

58.     As a direct and proximate cause of Aceco's breach of the contract, Plaintiff was injured.

59.     At all times relevant hereto, Liu and Yu were the sole shareholders, officers, directors, and agents of Aceco and had complete control and dominion over Aceco.

60.     Liu and Yu exercised their sole control and dominion over Aceco to engage in unjust and wrongful conduct against Plaintiff.

61.     Liu and Yu failed to adhere to the formalities of corporate existence of Aceco in that it failed to keep adequate records relating to the governance of its corporate affairs and accounting of its finances.

62.     Liu and Yu used the capital and funds belonging to Aceco for their personal use, including, but not limited to, paying their home mortgage obligations.

63.     Liu and Yu caused Aceco to be undercapitalized to engage in the business for which it was formed and did so with the intent of avoiding obligations as a result of its ordinary business operations.

64.     Liu and Yu, as Aceco's officers and directors, breached their fiduciary duty owed to the creditors of Aceco by failing to preserve the assets of Aceco for the benefits of its creditors.

65.     Liu and Yu commingled their personal funds with Aceco's funds, stripped Aceco of its assets for their personal use, caused Aceco to become a "shell" corporation, and used the "shell" corporation as a vehicle to facilitate their wrongful and unjust acts against Plaintiff while avoiding their personal liability.

66.     Therefore, Liu and Yu are not, and should not be, entitled to be shielded from the liability of Aceco.

67.     Plaintiff is entitled to piercing the corporate veil of Aceco to hold Liu and Yu personally liable for the debts of Aceco.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
(Against Aceco for account stated, and
against Liu and Yu for piercing the corporate veil)

68.     Plaintiff Dafeng repeats and re-alleges each and every paragraph number "1" through "67" of this Complaint as if fully set forth herein.

69.     Between February and July of 2013, Plaintiff sent its invoices to Aceco showing the balances due and owing on each of the shipments made by Plaintiff.

70.     Aceco retained a copy of each of the invoices which recited the total balance due and owing Plaintiffs from it respectively.

71.     Aceco retained the invoices without any objection as to the total balance or its obligations to make the full payment on the invoices.

72.    Indeed, Aceco never raised any dispute regarding these unpaid invoices and has expressly conceded to the accuracy of the total balance of each of the invoices sent to it by Plaintiff.

73.    Despite repeated demands, Aceco has refused and failed to make payment on the account stated.

74.    At all times relevant hereto, Liu and Yu were the sole shareholders, officers, directors, and agents of Aceco and had complete control and dominion over Aceco.

75.    Liu and Yu exercised their sole control and dominion over Aceco to engage in unjust and wrongful conduct against Plaintiff.

76.    Liu and Yu failed to adhere to the formalities of corporate existence of Aceco in that it failed to keep adequate records relating to the governance of its corporate affairs and accounting of its finances.

77.    Liu and Yu used the capital and funds belonging to Aceco for their personal use, including, but not limited to, paying their home mortgage obligations.

78.    Liu and Yu caused Aceco to be undercapitalized to engage in the business for which it was formed and did so with the intent of avoiding obligations as a result of its ordinary business operations.

79.    Liu and Yu, as Aceco's officers and directors, breached their fiduciary duty owed to the creditors of Aceco by failing to preserve the assets of Aceco for the benefits of its creditors.

80.    Liu and Yu commingled their personal funds with Aceco's funds, stripped Aceco of its assets for their personal use, caused Aceco to become a "shell" corporation, and

used the "shell" corporation as a vehicle to facilitate their wrongful and unjust acts against Plaintiff while avoiding their personal liability.

81.     Therefore, Liu and Yu are not, and should not be, entitled to be shielded from the liability of Aceco.

82.     Plaintiff is entitled to piercing the corporate veil of Aceco to hold Liu and Yu personally liable for the debts of Aceco.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

(a)     On the First and the Second causes of action, an award of monetary damages in favor of Plaintiff against Aceco in the amount of **$1,977,642.02**, together with the lost tax rebate in the amount to be determined at trial not less than ¥1,993,362.00 (RMB) or approximately $332,227, pre- and post-judgment interests pursuant to the McKinney's Uniform Commercial Code and/or any other laws of the United States;

(b)     On the First and the Second causes of action, an award of monetary damages in favor of Plaintiff against Liu and Yu personally and jointly in the amount of the judgment to be entered against Aceco by the Court under the laws of the State of New York.

(c)     Such other and further award in favor of Plaintiff as the Court deems just and proper.

Dated: October 23, 2013

Respectfully submitted,

LAW OFFICES OF BING LI, LLC
Attorneys for Plaintiff

By:/s/ Bing Li
     Bing Li (BL 5550)

## DECLARATION

Yonggen Qin, declares under penalty of perjury as follows:

1.     I am the President of DAFENG HENGWEI TEXTILE CO., LTD., the plaintiff herein.

2.     I have read the foregoing Complaint and know the contents thereof and hereby declare that the same is true to my personal knowledge except as to the matters stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

3.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 22 , 2013
Yancheng City, Jiangsu Province
The People's Republic of China

DAFENG HENGWEI TEXTILE CO., LTD.

By:_____
     Yonggen Qint, President

- 16 -